**14CV7639**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
David Aaron Epstein,

      Plaintiff

Index No._____

- against –

**COMPLAINT
AND DEMAND
FOR JURY TRIAL**

Comcast Cable Corporation,
Credit Protection Association, L.P.

      Defendants
-----------------------------------------------------------------x

TO THE SUPREME COURT OF THE STATE OF NEW YORK

Plaintiff David Aaron Epstein (hereinafter "Plaintiff Mr. Epstein"), pro se, as and for his Complaint against Defendants Comcast Cable Corporation and Credit Protection Association, L.P. (hereinafter collectively "Defendants"), allege, upon knowledge as to himself, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Mr. Epstein brings this action against the Defendants to recover losses suffered by Plaintiff due to the gross and willful negligence, and reckless and intentional actions by the Defendants Comcast Cable Corporation and Credit Protection Association, L.P., and their collective and individual violations of the Fair Debt Collection Practices Act.

2. Plaintiff Mr. Epstein suffered (a) actual damages due to the gross and willful negligence, and reckless and intentional behavior of the Defendants, (b) additional financial damages and expenses, and (c) pain and suffering as a result of the stress, duress, and fear placed upon him by the gross and willful negligence, and the reckless and intentional behavior of the Defendants.

3. Plaintiff Mr. Epstein seeks compensatory and punitive damages, as well as injunctive relief.

## PARTIES

4. The plaintiff herein, David Aaron Epstein, is domiciled and has a principal place of residence at 10 Easton Avenue, White Plains, New York, 10605 and, unless otherwise stated herein, at the time that the events described herein giving rise to the present action, was/is domiciled at the United States Embassy in Kabul, Afghanistan, East Side DPO, UNIT 6180, Box 1015, DPO AE 09806-1015.

5. Upon information and belief, the defendant herein, Comcast Cable Corporation, (a/k/a Comcast Cable Communications. a/k/a Comcast Cable, a/k/a and d/b/a Xfinity) (hereinafter "Defendant Comcast"), is a corporation organized and existing under the laws of the State of Pennsylvania with a principal place of business at 1500 Market Street, Philadelphia, PA 19102, and with established subsidiaries, affiliates, partners, or other related parties established throughout the United States. Defendant Comcast regularly conducts and transacts business in the States of Virginia and New York, specifically within this judicial district itself and through one or more subsidiaries, affiliates, partners, or other related parties. Comcast may be served with process by serving its registered agent, CT Corporation System, 1515 Market Street, Suite 1210, Philadelphia, PA, 19102.

6. Upon information and belief, the defendant herein Credit Protection Association, L.P., (hereinafter "Defendant Credit Protection"), is a corporation organized and existing under the laws of the State of Texas with a principal place of business of 13355 Noel Rd., Dallas, TX, 75240. Defendant Credit Protection regularly conducts and transacts business in the State of New York, specifically within this judicial district and/or through one or more subsidiaries, affiliates, partners, or other related parties. Defendant Credit Protective Association may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX, 75201.

11. At all times described herein, Plaintiff Mr. Epstein is, and remains, a commissioned Foreign Service Officer with the United States Department of State's Foreign Service.

## JURISDICTION AND VENUE

12. The court has jurisdiction over the present cause of action pursuant to New York State Civil Practice, Laws, and Rules ("CPLR") §§ 301 and 302, as each and every Defendant herein committed a tortuous act causing injury to the Plaintiff Mr. Epstein who is resident within the State of New York, and each and every Defendant regularly does or solicits business, and engages in other persistent courses of conduct within the State of New York, and must expect or should reasonably expect their tortuous actions against the Plaintiff to have consequences in the state. Further, the court has jurisdiction over the present cause of action pursuant to § 811 of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), which allows for actions to be brought in the judicial district in which the consumer resides at the commencement of the action. Venue is proper under CPLR § 503 as a result of Plaintiff residing in The City of White Plains, in the county of Westchester, in the State of New York, and so designating the venue.

## STATEMENT OF FACTS

13. At all times described herein, Plaintiff Mr. Epstein is, and remains, a commissioned Foreign Service Officer with the Unites States Department of State's Foreign Service; such commission requires Plaintiff Mr. Epstein at all times to maintain a Top Secret security clearance, which depends, inter alia, upon a financial record free from derogatory statements or other negative indicia.

14. In or about August 2012, Plaintiff Mr. Epstein was a victim of identity theft, which resulted in erroneous, fraudulent, and harmful reporting on his credit report to the three recognized national credit bureaus (Experian, TransUnion, and Equifax).

15. In or about November 2012, Plaintiff Mr. Epstein contracted with Defendant Comcast to begin receiving cable and internet service from Defendant Comcast at his then-residence located at 1200 First Street, Unit 723 in Alexandria, Virginia.

16. Concurrent with Plaintiff Mr. Epstein entering into a contract with Defendant Comcast to begin receiving cable and internet service from Defendant Comcast, Plaintiff Mr. Epstein enrolled in an automated payment service offered by Defendant Comcast. This automated payment service automatically charged to Plaintiff Mr. Epstein's American Express credit card account, ending -24005, the full and complete amount of any outstanding balance due and owed by Plaintiff Mr. Epstein to Defendant Comcast.

17. Plaintiff Mr. Epstein's American Express credit card account, ending -24005, was charged each and every month and paid in full for the services provided by Defendant Comcast to Plaintiff Mr. Epstein, thus fully satisfying any and all sums due and owed by Plaintiff Mr. Epstein to Defendant Comcast in a timely manner.

18. On or about April 3, 2014, Plaintiff Mr. Epstein escorted his then-pregnant wife and then-13-month-old son to Israel; on or about April 5, 2014, Plaintiff Mr. Epstein entrusted his wife and son into the care of his wife's family in Israel and returned to the United States to complete training and other work-related duties in furtherance of his role and responsibilities as a Foreign Service Officer in the United States Department of State's Foreign Service.

19. In or about May 2014, Plaintiff Mr. Epstein contacted Defendant Comcast to terminate his cable and internet service.

20. On or about May 23, 2014, Plaintiff Mr. Epstein completed, submitted, and effectuated a change of address request order with the United States Postal Service. This change of address request order was accepted by the United States Postal Service on or about May 23, 2014 and took effect on or about May 28, 2014. The change of address request order directed any and all correspondence intended for Plaintiff Mr. Epstein and/or any and all members of his family addressed to 1200 First Street, Unit 723 in Alexandria, Virginia be instead redirected and delivered to this domicile and permanent residence of 10 Easton Avenue, White Plains, New York 10605.

21. On or about May 28, 2014, Plaintiff Mr. Epstein's cable and internet service was effectively terminated.

22. On or about May 28, 2014, Defendant Comcast cancelled and terminated Plaintiff Mr. Epstein's enrollment in Defendant Comcast's automated payment service without notice to Plaintiff Mr. Epstein.

23. On or about May 31, 2014, Plaintiff Mr. Epstein, pursuant to official government orders issued by the United States Department of State, vacated his residence located at 1200 First Street, Unit 723 in Alexandria, Virginia in order to transfer to a position in the Political-Military Affairs Section of the United States Embassy in Kabul Afghanistan.

24. On or about June 7, 2014, Plaintiff Mr. Epstein traveled to Israel to begin paternity leave in anticipation of the birth of his second child.

25. On or about June 11, 2014, Plaintiff Mr. Epstein's second child was born.

26. On or about June 17, 2014, Defendant Comcast communicated with Defendant Credit Protection regarding Plaintiff Mr. Epstein. Through this communication, Defendant Comcast provided Defendant Credit Protection with personal and financial information regarding an alleged outstanding balance Defendant Comcast claimed was due and owed by Plaintiff Mr. Epstein to Defendant Comcast.

27. On or about July 5, 2014, Plaintiff Mr. Epstein departed Israel and arrived in Kabul, Afghanistan to begin a one-year tour of duty serving at the United States Embassy in the Political-Military Affairs Section of the United States Embassy in Kabul Afghanistan, leaving behind his wife and two children in Israel.

28. On or about July 13, 2014 Plaintiff Mr. Epstein received a collection notice from Defendant Credit Protection, dated July 7, 2013, which claimed to be a second notice (hereinafter "Second Notice"). The Second Notice demanded payment by Plaintiff Mr. Epstein of NINETY-ONE and 39/100 ($91.39) Dollars to Defendant Capital Protection. Plaintiff Mr. Epstein is not in possession of, nor has he ever received, a first notice from Defendant Credit Protection, nor any other entity, regarding any alleged outstanding balance due and owed to Defendant Comcast for any sum, or regarding any other account, balance, or other matter.

29. On or about July 13, 2014 Plaintiff Mr. Epstein began to experience the first manifestations of deleterious health effects due to the stress induced by his receipt of the erroneous, fraudulent, and harmful correspondence from Defendant Capital Protection. Plaintiff Mr. Epstein visited the Health Unit at Embassy Kabul and received three (3) prescription medications to treat these stress induced health conditions.

30. On or about July 14, 2014, Plaintiff Mr. Epstein contacted legal representatives from each of the three recognized national credit bureaus (Experian, TransUnion, and Equifax) to inform them of Defendants' erroneous, fraudulent, and harmful actions.

31. On or about July 14, 2014, Plaintiff Mr. Epstein repeatedly attempted to access his online Comcast account and was unable to do so.

32. On or about July 14, 2014, Plaintiff Mr. Epstein submitted correspondence online to Defendant Comcast to investigate and resolve the matter. In response, on or about July 14, 2014 and July 17, 2014, Plaintiff Mr. Epstein received two (2) identical form letters, which provided no response to the substance of Plaintiff Mr. Epstein correspondence.

33. On or about July 14, 2014, Plaintiff Mr. Epstein attempted telephonically to contact Defendant Comcast via their claimed twenty-four (24) hours a day, seven (7) days a week live agent hotline (located online at customer.comcast.com/contact-us/). Each time Plaintiff Mr. Epstein was met with a recorded message stating that Defendant Comcast maintained limited business hours and no live agents were available. Eventually Plaintiff Mr. Epstein reached the automated telephonic payment system provided by Defendant Comcast. According to this system, Defendant Comcast alleged that SIXTY-NINE and 62/100 ($69.62) Dollars was due and owed by Plaintiff Mr. Epstein to Defendant Comcast. Plaintiff Mr. Epstein immediately paid the alleged sum of SIXTY-NINE and 62/100 ($69.62) Dollars, in full, via his American Express credit card account ending -24005. At no time was Plaintiff Mr. Epstein afforded the opportunity to dispute this alleged sum and Plaintiff Mr. Epstein paid the alleged sum under duress to avoid erroneous, fraudulent, and harmful reporting to the three recognized national credit bureaus (Experian, TransUnion, and Equifax) that Plaintiff Mr. Epstein was in arrears on the alleged debt to Defendant Comcast.

34. On or about July 14, 2014 Plaintiff Mr. Epstein telephonically contacted Defendant Capital Protection to inquire about the Second Notice. A telephone representative from Defendant Capital Protection threatened Plaintiff Mr. Epstein that Defendant Capital Protection would erroneously, fraudulently, and harmfully report to the three recognized national credit bureaus (Experian, TransUnion, and Equifax) that Plaintiff Mr. Epstein was in alleged arrears on the alleged debt to Defendant Comcast. The telephone representative threatened that Plaintiff Mr. Epstein would be thirty (30) days past due on the alleged debt on or about July 17, 2014. The telephone representative informed Plaintiff Mr. Epstein that this date represented thirty (30) days after the date on which Defendant Comcast first communicated with Defendant Credit Protection regarding the alleged debt. The telephone representative of Defendant Credit Protection informed Plaintiff Mr. Epstein that the policy and business practice of Defendant Credit Protection was to report any and all alleged debts to the three recognized national credit bureaus (Experian, TransUnion, and Equifax) within thirty (30) days of Defendant Credit Protection's receipt of any communication from any entity alleging a debt, regardless of the original due on any alleged debt.

35. On or about July 14, 2014 Plaintiff Mr. Epstein telephonically contacted Defendant Comcast to inquire about the alleged debt and the Second Notice. In particular, during this telephone call Plaintiff Mr. Epstein sought (a) to identify which sum (SIXTY-NINE and 62/100 ($69.62) Dollars or NINETY-ONE and 39/100 ($91.39) Dollars) was, in fact, alleged by Defendant Comcast as due and owed by Plaintiff Mr. Epstein to Defendant Comcast; (b) to discover what date Defendant Comcast asserted was the final due date for any and all outstanding sums alleged

by Defendant Comcast as due and owed by Plaintiff Mr. Epstein to Defendant Comcast; (c) to obtain a final statement containing (i) confirmation of the May 28, 2014 final termination of service, (ii) the final sum, if any, alleged by Defendant Comcast as due and owed by Plaintiff Mr. Epstein to Defendant Comcast, (iii) the due date of any final sum, if any, alleged by Defendant Comcast as due and owed by Plaintiff Mr. Epstein to Defendant Comcast, and (iv) confirmation that any and all outstanding sums alleged by Defendant Comcast as due and owed by Plaintiff Mr. Epstein to Defendant Comcast were fully paid and satisfied in a timely manner; (d) to pay any final sum, if any, alleged by Defendant Comcast as due and owed by Plaintiff Mr. Epstein to Defendant Comcast; and (e) to affirm that the fact of full payment and satisfaction of any final sum, if any, alleged by Defendant Comcast as due and owed by Plaintiff Mr. Epstein be communicated immediately to Defendant Credit Protection in order to prevent Defendant Credit Protection from erroneously, fraudulently, and harmfully reporting the alleged debt to the three recognized national credit bureaus (Experian, TransUnion, and Equifax).

36. As per Plaintiff Mr. Epstein's first objective in his telephone call with Defendant Comcast, the telephone representative of Defendant Comcast informed Plaintiff Mr. Epstein that Defendant Comcast alleged that the final sum of NINETY-ONE and 39/100 ($91.39) Dollars was due and owed by Plaintiff Mr. Epstein to Defendant Comcast. Plaintiff Mr. Epstein inquired as to the source of the SIXTY-NINE and 62/100 ($69.62) Dollars sum claimed via Defendant Comcast's the automated payment system recording, and subsequently paid, in full, via Plaintiff Mr. Epstein's American Express credit card account ending -24005. The telephone representative of Defendant Comcast informed Plaintiff Mr. Epstein that he had no knowledge of the SIXTY-NINE and 62/100 ($69.62) Dollars sum and had no record of the sum being paid my Plaintiff Mr. Epstein.

37. During the telephone call made by Plaintiff Comcast to Defendant Comcast, Plaintiff Mr. Epstein immediately paid the alleged sum of NINETY-ONE and 39/100 ($91.39) Dollars, in full, via his American Express credit card account ending -24005. Plaintiff Mr. Epstein paid the alleged sum under duress to avoid erroneous, fraudulent, and harmful reporting to the three recognized national credit bureaus (Experian, TransUnion, and Equifax) that Plaintiff Mr. Epstein was in alleged arrears on the alleged debt to Defendant Comcast. Plaintiff Mr. Epstein received confirmation number 187927 for this transaction.

38. As per Plaintiff Mr. Epstein's second objective in his telephone call with Defendant Comcast, Defendant Comcast's telephone representative asserted that the date Defendant Comcast asserted was the final due date for any and all outstanding sums alleged by Defendant Comcast as due and owed by Plaintiff Mr. Epstein to Defendant Comcast was July 7, 2014.

39. As per Plaintiff Mr. Epstein's third objective in his telephone call with Defendant Comcast, Defendant Comcast's telephone representative informed Plaintiff Mr. Epstein that Plaintiff Mr. Epstein would need to speak with Defendant Comcast's billing department in order to obtain a final statement containing (a) confirmation of the May 28, 2014 final termination of service, (b) the final sum, if any, alleged by Defendant Comcast as due and owed by Plaintiff Mr. Epstein to Defendant Comcast, (c) the due date of any final sum, if any, alleged by Defendant Comcast as due and owed by Plaintiff Mr. Epstein to Defendant Comcast, and (d) confirmation that any and all outstanding sums alleged by Defendant Comcast as due and owed by Plaintiff Mr. Epstein to

Defendant Comcast were fully paid and satisfied in a timely manner. When Defendant Comcast's telephone representative transferred Plaintiff Mr. Epstein to Defendant Comcast's billing department, Defendant Comcast's billing department informed Plaintiff Mr. Epstein that Plaintiff Mr. Epstein would need to speak with Defendant Comcast's collections department. Defendant Comcast's billing department allegedly transferred Plaintiff Mr. Epstein to Defendant Comcast's collections department; Plaintiff Mr. Epstein never again spoke to a human being during this call and eventually, after over one (1) hour on the phone, most of it on hold, calling from eight and one-half (8.5) hours ahead of Eastern Standard Time in Kabul, Afghanistan, Plaintiff Mr. Epstein was ultimately and abruptly disconnected from Defendant Comcast's telephone system.

40. As per Plaintiff Mr. Epstein's fourth objective in his telephone call with Defendant Comcast, as noted above, Plaintiff Mr. Epstein immediately paid the alleged sum of NINETY-ONE and 39/100 ($91.39) Dollars, in full, via his American Express credit card account ending -24005. Plaintiff Mr. Epstein paid the alleged sum under duress to avoid erroneous, fraudulent, and harmful reporting to the three recognized national credit bureaus (Experian, TransUnion, and Equifax) that Plaintiff Mr. Epstein was in arrears on the alleged debt to Defendant Comcast. Plaintiff Mr. Epstein received confirmation number 187927 for this transaction.

41. As per Plaintiff Mr. Epstein's fifth objective in his telephone call with Defendant Comcast, as noted above, Defendant Comcast's telephone representative informed Plaintiff Mr. Epstein that Plaintiff Mr. Epstein would need to speak with Defendant Comcast's billing department in order to affirm that the fact of full payment and satisfaction of any final sum, if any, alleged by Defendant Comcast as due and owed by Plaintiff Mr. Epstein be communicated immediately to Defendant Credit Protection in order to prevent Defendant Credit Protection from erroneously, fraudulently, and harmfully reporting the alleged debt to the three recognized national credit bureaus (Experian, TransUnion, and Equifax). Again, as noted above, when Defendant Comcast's telephone representative transferred Plaintiff Mr. Epstein to Defendant Comcast's billing department, Defendant Comcast's billing department informed Plaintiff Mr. Epstein that Plaintiff Mr. Epstein would need to speak with Defendant Comcast's collections department. Defendant Comcast's billing department claimed to transfer Plaintiff Mr. Epstein to Defendant Comcast's collections department; Plaintiff Mr. Epstein never again spoke to a human being during this call and eventually after over one (1) hour on the phone, most of it on hold, calling from eight and one-half (8.5) hours ahead of Eastern Standard Time in Kabul, Afghanistan, Plaintiff Mr. Epstein was ultimately and abruptly disconnected from Defendant Comcast's telephone system.

42. Due to the gross and willful negligence, and reckless and intentional actions of the Defendants, including, but not limited to, the erroneous, fraudulent, and harmful reporting by Defendant Comcast to Defendant Credit Protection of an alleged debt due and owed by Plaintiff Mr. Epstein to Defendant Comcast, and Defendant Credit Protection's threats to erroneously, fraudulently, and harmfully reporting the alleged debt to the three recognized national credit bureaus (Experian, TransUnion, and Equifax), Defendants violated the FDCPA.

43. Due to the gross and willful negligence, and reckless and intentional actions of the Defendants, including, but not limited to, the erroneous, fraudulent, and harmful reporting by

Defendant Comcast to Defendant Credit Protection of an alleged debt due and owed by Plaintiff Mr. Epstein to Defendant Comcast, and Defendant Credit Protection's threats to erroneously, fraudulently, and harmfully report the alleged debt to the three recognized national credit bureaus (Experian, TransUnion, and Equifax), Plaintiff Mr. Epstein suffered actual, physical, emotional, and financial harm.

## FIRST CAUSE OF ACTION: DEFENDANT COMCAST IS STRICTLY LIABLE FOR VIOLATIONS OF THE FDCPA

44. Plaintiff realleges and incorporates the allegations set forth above in paragraphs 1-43 above as if set forth herein in full.

45. Defendant Comcast knowingly transmitted to Defendant Credit Protection personal and financial information pertaining to Plaintiff Mr. Epstein that Defendant Comcast knew, or should have known, was not due and owed, or past due and owed, by Plaintiff Mr. Epstein to Defendant Comcast.

46. Defendant Comcast knew, or should have known, that Defendant Credit Protection maintained policies and business practices that violate the FDCPA, including, but not limited to, engaging in erroneous, fraudulent, and harmful threats to report alleged debts to the three recognized national credit bureaus (Experian, TransUnion, and Equifax).

47. Defendant Comcast knew, or should have known, that Defendant Credit Protection maintained policies and business practices that violate the FDCPA, including, but not limited to, engaging in erroneous, fraudulent, and harmful threats to report and in fact reporting alleged debts to the three recognized national credit bureaus (Experian, TransUnion, and Equifax) before the alleged date that such alleged debts were allegedly due and owed.

48. Defendant Comcast knew, or should have known, that transmitting to Defendant Credit Protection personal and financial information pertaining to Plaintiff Mr. Epstein prior to the date on which Defendant Comcast alleged that the alleged debt was allegedly due and owed by Plaintiff Mr. Epstein to Defendant Comcast would result in erroneous, fraudulent, and harmful actions by Defendant Credit Protection in violation of the FDCPA.

49. Defendant Comcast's actions caused substantial financial, physical, and emotional injury to Plaintiff Mr. Epstein.

## SECOND CAUSE OF ACTION: DEFENDANT COMCAST IS VICARIOUSLY LIABLE FOR VIOLATIONS OF THE FDCPA

50. Plaintiff realleges and incorporates the allegations set forth above in paragraphs 1-49 above as if set forth herein in full.

51. Defendant Comcast knowingly transmitted to Defendant Credit Protection personal and financial information pertaining to Plaintiff Mr. Epstein that Defendant Comcast knew, or should have known, was not due and owed by Plaintiff Mr. Epstein to Defendant Comcast.

52. Defendant Comcast knew, or should have known, that Defendant Credit Protection maintained policies and business practices that violate the FDCPA, including, but not limited to, engaging in erroneous, fraudulent, and harmful threats to report alleged debts to the three recognized national credit bureaus (Experian, TransUnion, and Equifax).

53. Defendant Comcast knew, or should have known, that Defendant Credit Protection maintained policies and business practices that violate the FDCPA, including, but not limited to, engaging in erroneous, fraudulent, and harmful threats to report and in fact reporting alleged debts to the three recognized national credit bureaus (Experian, TransUnion, and Equifax) before the alleged date that such alleged debts were allegedly due and owed.

54. Defendant Comcast knew, or should have known, that transmitting to Defendant Credit Protection personal and financial information pertaining to Plaintiff Mr. Epstein prior to the date on which Defendant Comcast alleged that the alleged debt was allegedly due and owed by Plaintiff Mr. Epstein to Defendant Comcast would result in erroneous, fraudulent, and harmful actions by Defendant Credit in violation of the FDCPA.

55. Defendant Comcast had the right, ability, and duty to control and prevent the actions of Defendant Credit Protection and in failing to do so knowingly enabled and facilitated Defendant Credit Protection from violating the FDCPA.

56. Defendant Comcast's actions caused substantial financial, physical, and emotional injury to Plaintiff Mr. Epstein.

## THIRD CAUSE OF ACTION: DEFENDANT COMCAST IS CONTRIBUTORILY LIABLE FOR VIOLATIONS OF THE FDCPA

57. Plaintiff realleges and incorporates the allegations set forth above in paragraphs 1-56 above as if set forth herein in full.

58. Defendant Comcast knowingly transmitted to Defendant Credit Protection personal and financial information pertaining to Plaintiff Mr. Epstein that Defendant Comcast knew, or should have known, was not due and owed by Plaintiff Mr. Epstein to Defendant Comcast.

59. Defendant Comcast knew, or should have known, that Defendant Credit Protection maintained policies and business practices that violate the FDCPA, including, but not limited to, engaging in erroneous, fraudulent, and harmful threats to report alleged debts to the three recognized national credit bureaus (Experian, TransUnion, and Equifax).

60. Defendant Comcast knew, or should have known, that Defendant Credit Protection maintained policies and business practices that violate the FDCPA, including, but not limited to, engaging in erroneous, fraudulent, and harmful threats to report and in fact reporting alleged debts to the three recognized national credit bureaus (Experian, TransUnion, and Equifax) before the alleged date that such alleged debts were allegedly due and owed.

61. Defendant Comcast knew, or should have known, that transmitting to Defendant Credit Protection personal and financial information pertaining to Plaintiff Mr. Epstein prior to the date on which Defendant Comcast alleged that the alleged debt was allegedly due and owed by Plaintiff Mr. Epstein to Defendant Comcast would result in erroneous, fraudulent, and harmful actions by Defendant Credit in violation of the FDCPA.

62. Defendant Comcast had the right, ability, and duty to control and prevent the actions of Defendant Credit Protection and in failing to do so knowingly enabled and facilitated Defendant Credit Protection from violating the FDCPA.

63. Defendant Comcast's actions caused substantial financial, physical, and emotional injury to Plaintiff Mr. Epstein.

## FOURTH CAUSE OF ACTION:
## DEFENDANT COMCAST CAUSED FINANCIAL, PHYSICAL, AND EMOTIONAL INJURY TO PLAINTIFF MR. EPSTEIN THROUGH GROSS AND WILLFUL NEGLIGENCE AND RECKLESS AND INTENTIONAL ACTIONS

64. Plaintiff realleges and incorporates the allegations set forth above in paragraphs 1-63 above as if set forth herein in full.

65. Defendant Comcast knowingly transmitted to Defendant Credit Protection personal and financial information pertaining to Plaintiff Mr. Epstein that Defendant Comcast knew, or should have known, was not due and owed by Plaintiff Mr. Epstein to Defendant Comcast.

66. Defendant Comcast knew, or should have known, that Defendant Credit Protection maintained policies and business practices that violate the FDCPA, including, but not limited to, engaging in erroneous, fraudulent, and harmful threats to report alleged debts to the three recognized national credit bureaus (Experian, TransUnion, and Equifax).

67. Defendant Comcast knew, or should have known, that Defendant Credit Protection maintained policies and business practices that violate the FDCPA, including, but not limited to, engaging in erroneous, fraudulent, and harmful threats to report and in fact reporting alleged debts to the three recognized national credit bureaus (Experian, TransUnion, and Equifax) before the alleged date that such alleged debts were allegedly due and owed.

68. Defendant Comcast knew, or should have known, that transmitting to Defendant Credit Protection personal and financial information pertaining to Plaintiff Mr. Epstein prior to the date on which Defendant Comcast alleged that the alleged debt was allegedly due and owed by Plaintiff Mr. Epstein to Defendant Comcast would result in erroneous, fraudulent, and harmful actions by Defendant Credit in violation of the FDCPA.

69. Defendant Comcast had the right, ability, and duty to control and prevent the actions of Defendant Credit Protection and in failing to do so knowingly enabled and facilitated Defendant Credit Protection from violating the FDCPA.

70. Defendant Comcast's actions caused substantial financial, physical, and emotional injury to Plaintiff Mr. Epstein.

71. Plaintiff Mr. Epstein's injuries were a reasonably foreseeable and proximate consequence of Defendant Comcast's actions.

## FIFTH CAUSE OF ACTION:
## DEFENDANT CREDIT PROTECTION IS STRICTLY LIABLE
## FOR VIOLATIONS OF THE FDCPA

72. Plaintiff realleges and incorporates the allegations set forth above in paragraphs 1-71 above as if set forth herein in full.

73. Defendant Credit Protection maintains policies and business practices that violate the FDCPA, including, but not limited to, engaging in erroneous, fraudulent, and harmful threats to report alleged debts to the three recognized national credit bureaus (Experian, TransUnion, and Equifax).

74. Defendant Credit Protection maintained policies and business practices that violate the FDCPA, including, but not limited to, engaging in erroneous, fraudulent, and harmful threats to report and in fact reporting alleged debts to the three recognized national credit bureaus (Experian, TransUnion, and Equifax) before the alleged date that such alleged debts were due and owed.

75. Defendant Credit Protection knew, or should have known, that threatening and reporting personal and financial information pertaining to Plaintiff Mr. Epstein, including, but not limited to erroneous, fraudulent, and harmful allegations of debts past due, prior to the date on which Defendant Comcast alleged that the alleged debt was allegedly due and owed by Plaintiff Mr. Epstein to Defendant Comcast would result in erroneous, fraudulent, and harmful actions by Defendant Credit Protection in violation of the FDCPA.

76. Defendant Comcast's actions caused substantial financial, physical, and emotional injury to Plaintiff Mr. Epstein.

## SIXTH CAUSE OF ACTION:
## DEFENDANT COMCAST CAUSED FINANCIAL, PHYSICAL, AND EMOTIONAL INJURY TO PLAINTIFF MR. EPSTEIN THROUGH GROSS AND WILLFUL NEGLIGENCE AND RECKLESS AND INTENTIONAL ACTIONS

77. Plaintiff realleges and incorporates the allegations set forth above in paragraphs 1-76 above as if set forth herein in full.

78. Defendant Credit Protection maintains policies and business practices that violate the FDCPA, including, but not limited to, engaging in erroneous, fraudulent, and harmful threats to report alleged debts to the three recognized national credit bureaus (Experian, TransUnion, and Equifax).

79. Defendant Credit Protection maintained policies and business practices that violate the FDCPA, including, but not limited to, engaging in erroneous, fraudulent, and harmful threats to report and in fact reporting alleged debts to the three recognized national credit bureaus (Experian, TransUnion, and Equifax) before the alleged date that such alleged debts were allegedly due and owed.

80. Defendant Credit Protection knew, or should have known, that reporting personal and financial information pertaining to Plaintiff Mr. Epstein, including, but not limited to erroneous, fraudulent, and harmful allegations of debts past due, prior to the date on which Defendant Comcast alleged that the alleged debt was allegedly due and owed by Plaintiff Mr. Epstein to Defendant Comcast would result in erroneous, fraudulent, and harmful actions by Defendant Credit Protection in violation of the FDCPA.

81. Defendant Credit Protection's actions caused substantial financial, physical, and emotional injury to Plaintiff Mr. Epstein.

82. Plaintiff Mr. Epstein's injuries were a reasonably foreseeable and proximate consequence of Defendant Credit Protection's actions.

## REMEDY REQUESTED

79. WHEREFOR, as a consequence of the strict liability, vicarious liability, contributory liability, gross and willful negligence, and reckless and intentional actions, on the part of the Defendants, Plaintiff David Aaron Epstein demands a jury trial and the following relief jointly and severally:

   a. For the strict, vicarious, and contributory liability in violating the FDCPA, Plaintiff Mr. Epstein seeks relief in the sum of ONE THOUSAND and 00/100 ($1,000.00) Dollars from each of the Defendants (e.g., ONE THOUSAND and 00/100 [$1,000.00] Dollars from Defendant Comcast and ONE THOUSAND and 00/100 [$1,000.00] Dollars from Defendant Credit Protection, for a total of TWO THOUSAND and 00/100 [$2,000.00] Dollars).

   b. For the gross and willful negligence, and reckless and intentional actions on the part of Defendant Comcast in maintaining account and billing information and the unjustified collection, under duress, of one or both of SIXTY-NINE and 62/100 ($69.62) Dollars and/or NINETY-ONE and 39/100 ($91.39) Dollars, Plaintiff Mr. Epstein seeks relief in the amount of SIXTY-NINE and 62/100 ($69.62) Dollars or NINETY-ONE and 39/100 ($91.39) Dollars, whichever Defendant Comcast is unable affirmatively to demonstrate were due and owed, if at all, by Plaintiff Mr. Epstein to Defendant Comcast, or ONE HUNDRED SIXTY ONE and 01/100 ($161.01) Dollars, should Defendant Comcast be unable affirmatively to demonstrate any alleged sums due and owed by Plaintiff Mr. Epstein to Defendant Comcast.

   c. For the financial, physical, and emotional harm caused to and experienced by Plaintiff Mr. Epstein, Plaintiff Mr. Epstein seeks relief in the amount of TWO MILLION and 00/100 ($2,000,000.00).

   d. For the gross and willful negligence, and reckless actions, on the part of the Defendants and their individual and cumulative effect on Plaintiff Mr. Epstein, Plaintiff Mr. Epstein seeks punitive damages in an amount of FIVE MILLION and 00/100 ($5,000,000.00) DOLLARS.

80. FURTHER, Plaintiff David Aaron Epstein demands affirmative proof from both Defendant Comcast and Defendant Credit Protection that each has communicated with the three recognized national credit bureaus (Experian, TransUnion, and Equifax), and any and all other entities or individuals with whom they may have communicated regarding any and all matters related or pertaining to Plaintiff Mr. Epstein, that Plaintiff Mr. Epstein was/is not in arrears on any debts to Defendants or any other entities regarding the instant matter and that no derogatory information regarding Plaintiff Mr. Epstein related to or originated from Defendant Comcast and/or Defendant Credit Protection regarding this or any other matter should appear on any report regarding Plaintiff Mr. Epstein's credit, credit worthiness, or any other financial matter.

Dated:
5 Aug 2014
Kabul, Afghanistan

By: _____
David Aaron Epstein, Pro Se

East Side DPO,
UNIT 6180, Box 1015,
DPO AE 09806-1015.
Email: DaveAEpstein@gmail.com
Phone: +93 (0) 703-369-713